Good morning. Good morning. May it please the Court. I'm Hugh McGavick for Plaintiff Appellant Stella Satter and we are here because the District Court made errors on the state and federal law claims that were presented. There are two issues. The 1983 claim for prior restraint of free speech and retaliation and the wrongful termination in violation of public policy under state law, which has been changed a little bit since the briefs by the Cudney decision. I'll get to that but I want to begin with the federal claim. The District Court found that there was a prior restraint of free speech. The Court held there was a misuse of public money, wastefulness and inefficiency, including Mr. Slattery and Ms. Osborne's nepotism, which were matters of public concern. So that was a finding of prior restraint. The first prong of the Pickering balancing test, the same analysis weighed in favor of Stella. On the second prong of the balancing, did the governmental interest outweigh the complainant's interest? The Court erroneously mixed question of fact and law, got both wrong and found there was no, it found that the government's interest in an efficient investigation justified placing a gag order on Stella for the whole 94 days she was on administrative leave until she resigned. Mr. McGavick, am I correct that the scope of the restriction is as set forth in the March 13, 2000 letter signed by Mr. Slattery? That's correct. So as I read that letter, she is instructed not to contact any ecology employee or to discuss the circumstances regarding her reassignment with any ecology employee. Correct. That's all it says. It doesn't say she can't go to the Washington auditor or the news media or write her congressman or her state legislator. There's no prohibition on that, is there? Correct. So why did the district court err then in concluding that to the extent that she was restricted from talking to ecology employees, that the interest of the department in a fair, efficient, and impartial investigation outweighed that narrow restriction? Well, I appreciate that you've got the first part of that disjunctive prohibition because that is the focus. You may not talk to any DOE employees during the pendency of the investigation. But the investigation wasn't over, was it? Well, here's the timeline on that. I'm familiar with the chronology. I guess the concern I have is your argument would end the investigation when the outside lawyer completed her report, and I'm wondering if that's too narrow a view of what the pendency of the investigation means, because she never even finished the Loudermill hearing or the Loudermill proceedings, did she? She tendered her resignation at the end of the meeting before the decision maker had even read her response to the charges. That last factual part is correct. The reason that it's an improper governmental restriction is because it was overbroad and it was not particularly tailored. Why would you prohibit talking to the director or your peers or superiors at ecology during the pendency of an investigation? Because they're being contacted by an outside investigator, and we don't want the subject of the investigation to be influencing the statements of the witnesses. That seems to be a pretty reasonable restriction. But this prohibition was contacting them to talk about anything. It says regarding your reassignment. No, that's the disjunctive second part. Okay, so let's step back. If the DOE had given the prohibition to not discuss, in effect, your reassignment, would that, in your view, have been constitutional? Yes. So the overbreadth is that it goes beyond the scope of the investigation and her complaints? Correct. Within the DOE? Correct. What was the government interest in silencing Stella on everything from the day she was sent home until, you know, day 43 and the investigation was done, she could no longer interfere with that, and it was day 94 she submitted her resignation after the Loudermill hearing? Well, the question I have, I think these pickering cases are always difficult, as you know, and they leave to the courts to come in after the fact and make a judgment. In the Moran v. State of Washington case, we basically said that because these are so context-specific and so fact-intensive, that the law is rarely, if ever, clearly established enough such that it would preclude qualified immunity. So even if we agreed with you that in the context of what happened here, that there was not only a constitutional violation, but it wasn't properly weighed against the government interest, why? Now you've had a district judge making that judgment. Why were the state employees not entitled to qualified immunity under Moran? Well, because this was a prospective restraint of speech. Moran goes way back to 82. We've got a lot of law that's evolved since then. A case doesn't need to be identical, as this court stated many times. The disruption that, what is the prohibition about? It's to avoid disruption of the investigation, and the state claims that. As your Nichols v. Dancer case Judge McEwen addressed in September of this year, disruption, you can't just say disruption and you get Trump over the employee's rights. If you claim disruption, you have to have a legitimate basis for it. And there's a claim, but on summary judgment, that claim should be resolved in favor of a 20-year employee with no disciplinary history against one complainant, Ms. Ashburn, with an agenda, who had a known casual relationship with the truth and was very suspect by everybody, including Mr. Slattery. I guess the question I have is, there was a lot going on in that little section of the DOE, there's no doubt about it, that some of which is somewhat shocking, to be honest, in terms of potential nepotism and the claims and that sort of thing. So one can understand why she came forward. But why wouldn't it be reasonable on the part of the Department to say, you know, we don't, contacting these DOE employees during this investigation just puts them in a difficult position, and it also protects her. Now, I know it's not related just to the investigation, but why wouldn't it be a legitimate government interest to say, look, just during this limited time, and we know Loudermill has a statutory course and case course that it takes, I mean, there is an end point to these Loudermill hearings. Why wouldn't it be legitimate for the government to say, this just puts everything in a freeze position, and however things turn out, then we'll take it from there. But between now and then, hands off. Now, as Judge Thomas said, you can go to the press, you can, you know, you can go talk to the governor, you can do whatever else you want, but we're not going to risk or potentially influence the investigation by having you tinker with the employees. Why isn't that a legitimate interest? I think the government has a very legitimate interest in protecting the integrity of an investigation, and I think that it, but they have to respect the employee's rights to narrowly tailor that restriction to accomplish their stated purpose. And in the fact part, you know, now and then, what's the then? Is the then when the investigation is done, or is it when the Loudermill is completed? What's the point in gagging an employee from speech with anybody at the department after the investigation, the psychrosanct investigation they're trying to protect is complete? There is no governmental interest there, particularly when there are factual assertions on the fact basis of the second pickering prong that the decision maker, Mr. Slattery, had personal reasons to keep her quiet and to keep her away from other people. Mr. McGarrett, let me come back to Judge McEwen's question on qualified immunity. I mean, let's assume for purpose of this question that the prohibition was overbrought, as you contend, right? In other words, it, you know, went beyond what legitimately could be prohibited under the constitutional violation. So the second inquiry under qualified immunity is, was that law so clearly established, right, that a reasonable person in the position of supervisor should know that this kind of broad prohibition is unconstitutional? Now, what's the best case that supports your position that, yes, the law was clearly established, and it was, therefore, unreasonable to, for the state to impose this prohibition? Well, there are a couple of cases I would cite. There's a heavy presumption against constitutional violation established by the New York Times versus Sullivan. No, what's your best case in this context, you know, where there's an investigation, where there is, you know, some legitimate need in, you know, protecting, I'll say, the, you know, the cleanliness of the investigation, I'll put it that way. So there's some justification for it, but you can't go too far. Now, you have any cases that deal with that kind of area? Well, aside specifically from our brief, the U.S. versus National Treasury case, I think is a good one, which establishes a higher burden on prospective speech. And I also think there's facts that need to be considered on this, Judge, that the slattery was a decision-maker, but he was not a personnel guy. He was sent to personnel where the director of HR, Joyce St. Germain, gave him a suggestions memo, which came out after discovery. It was the basis for motions for reconsideration, advising that she'd be advised not to contact employees about the investigation and that she'd be reassigned to work. So for a best case, I think National Treasury may be the best case. The difficulty there, though, is that if you're sitting in the supervisor's position, National Treasury doesn't really drive you to a different result, does it? I mean, there's principles, but they're pretty vague, I guess, which brings you back to Moran, which says, you know, you're really, I think, in a, it puts you kind of in a straitjacket, to be honest, in these pickering cases. Well, hopefully I can get out of that straitjacket. Okay. I believe that this is clearly established law from the black letter, black dictionary definition of prior restraint and well understanding of what that term means. The First Amendment prior restraint is a far different beast than a police officer engaging in a search. And, you know, you've had a Fourth Amendment case here this morning, and you've had them, nearly every panel you've ever sat on, I suspect, at least one. And that's a different issue than telling an employee what they can't say in advance. This is clear-cut, straightforward, free speech law. This is First Amendment law that doesn't have all the vagaries and idiosyncrasies of the Fourth Amendment. So I think it's straightforward enough. Mr. McGaffey, if I understand you correctly, then, if the letter had been rewritten to simply say you are not to contact any ecology employee to discuss the circumstances regarding your, you wouldn't have any problem with that restriction. I would never have brought this client. Okay. All right. I'd like to reserve my final moment. You may. Thank you, Mr. McGaffey. May it please the Court. Ian Bauer, Assistant Attorney General, on behalf of defendants, appellees, Ken Slattery, and the Department of Ecology. The decisions below should be affirmed because Ms. Satter's prior restraint claim fails at both steps of the Pickering balancing test, and Slattery is entitled to qualified immunity. Moreover, Satter failed to establish any of the elements of her wrongful discharge state law claim. Excuse me. Unless the Court has specific questions, however, my comments will focus on three issues. First, the second step of the Pickering balancing test, and that the restriction imposed was reasonable under the circumstances. Second, that even if that instruction did constitute an unconstitutional prior restraint, that Slattery is nevertheless entitled to qualified immunity. And third, with respect to the state law wrongful discharge claim, Satter failed to establish that ecology's justifications for its investigation were pretextual. Turning to that first issue, assuming that the instruction does constitute a prior restraint, the District Court correctly concluded that the letters restriction was reasonable under the circumstances. This is not a broadly worded rule, law, or policy that applies to all ecology employees all of the time. This restriction was imposed only during an investigation into Ms. Satter's conduct had disrupted the workplace, and that employees were, quote, afraid to cross her for fear of retaliation. So is that your justification for the first clause of the letter? You are not to contact any ecology employee because you couldn't know at that point who might be involved in interactions that might underlie the complaint? Precisely, Your Honor. And more to the point, Ms. Satter doesn't know who is involved. And if she could call someone with the most innocuous of reasons, the most innocuous purpose that could possibly exist, yet the question then becomes how that phone call is interpreted. And under these circumstances, this was a reasonable instruction. Let me ask you, does she have a right to prepare a defense? She certainly has a right to prepare a defense. Can't she contact potential witnesses? She is entitled to prepare a defense, and she would manage to do that at the Loudermill hearing. But that's my question. Isn't she entitled to contact potential witnesses? Not when the government employer's interests Why should the government have a monopoly on all the witnesses? The government, we don't believe the government had a monopoly on all the witnesses. Well, for a period, that was the purpose of the letter, wasn't it, to give the government a monopoly for a certain period? The purpose was to allow the investigation to proceed without interference and so that all employees' rights would be protected, including the rights of the potential witnesses against Ms. Satter. This is not about establishing a monopoly. She has potential witnesses for her. How is she going to line those up? I do not know exactly, Your Honor. She can't, because she's prohibited from contacting them, right? She is prohibited from contacting them, but she still can present a defense, as she did at the Loudermill hearing with her attorney, who did file public disclosure requests for documents. And she prepared and submitted a 26-page, single-spaced letter, which addressed in great detail the allegations that were made against her. And she had, what, two weeks, three weeks in advance of the Loudermill hearing? About almost three weeks, just under. So she gets a report of the investigation three weeks before the hearing. Is it your position that, at that point, an attorney representing her could contact these DOE employees to interview them? The letter doesn't specifically address an attorney, but that would be the Department's position, because, again, we have the case— An attorney could contact these witnesses who are listed in the report of investigation. Theoretically, that isn't this case, though. There is simply nothing to suggest that— It's a hypothetical question. That's why I'm asking it. I want to push your position to see how far you're going to go, Mr. Brower. The letter speaks to Ms. Satter. It does not specifically address an attorney, and I do not know how that would have been interpreted under the circumstances. What we do know here is that Ms. Satter, before she even leaves the parking lot at Ecology on the morning of March 13th, fully aware of the letter's restriction, she does start attempting to contact Ms. Ashbourne. She calls her twice, and that's reported to Mr. Slattery, who reiterates the instruction to Ms. Satter. This is a reasonable instruction under the circumstances because of the allegations, and it's a prudent instruction because, even being aware of it, Ms. Satter is already attempting to contact witnesses. So under the circumstances, this is not an unconstitutional prior restraint, and we ask that you so conclude. The turning to qualified immunity, even if this were considered to be unreasonable under the circumstances, the issue then becomes, under Ashcroft v. Al-Kidd and all of its antecedents, whether every reasonable public official in Mr. Slattery's shoes as of March of 2007 would have known that he was crossing a bright line and that it was beyond debate that he was violating, at that point in time, Ms. Satter's constitutional rights. Satter has simply failed to carry her burden in this regard. During the proceedings below and before this Court, she has not cited a single case which would portend the outcome of the Pickering balancing test under these circumstances. She's instead framed the issue in broad pronouncements of First Amendment law, which, while they cannot be disputed, they simply do not portend the outcome of Pickering here. Slattery didn't draft the letter, did he? That was prepared by somebody in HR? That is correct. It was prepared by Michael South. And who's South? He was the human resources professional. He was a manager in that. I forget his exact title. Okay. And so Slattery then just signed it? Is that what the State of the Union said? Yes. There's no evidence that he made any edits to the letter whatsoever. The cases that the plaintiff has cited are simply not on point. They do not address investigations into workplace misconduct where there are allegations that the subject employee's conduct has disrupted the workplace. And they simply do not tell any reasonable public official in Slattery's shoes what the constitutional boundaries are. So the Slattery is less entitled to qualified immunity. And this Court should affirm on that basis alone. Turning briefly to the state law constructive discharge claim, as the Court is aware from our briefing, plaintiff's claim fails at every step of the analysis, at the constructive discharge analysis and on all four steps of the wrongful termination analysis. But just to focus on that fourth element, to establish an absence of judgment. Now, the wrongful termination claim depends first on finding that there was a constructive discharge, right? Correct. All right. Go ahead. Once the constructive discharge is established, then this Court would turn to the four elements of the wrongful termination claim. And under the fourth amendment, or excuse me, the fourth element, the absence of justification element, a plaintiff must demonstrate that the employer's justifications for its actions are without any basis, that they are mere pretext. And under Washington law, the plaintiff must produce, quote, specific substantiated evidence that the reasons are unworthy of belief. Here, the plaintiff failed during the proceedings below to submit any evidence of that, and categorically failed to respond to the Department's arguments on the fourth element of this claim. And before this Court, she's simply relying on conclusory assertions about Ken Slattery's illicit motivations and the alleged illicit motivations of other individuals. But the record simply does not support those assertions. They do not constitute the type of evidence that is required under summary judgment, nor does it constitute the type of evidence that is required under Washington law, the specific substantiated evidence of pretext. And when you look at the facts in this case and the record, there are two facts or categories of undisputed fact that establish that the Department's justifications for its investigation were not a pretext. First of all, it is undisputed that Ecology received numerous allegations of misconduct regarding Ms. Satter, including the allegation that her conduct had disrupted the workplace. Ecology has an established interest in investigating these allegations, and there's no evidence that Slattery was orchestrating those allegations coming forward, that he somehow put Ms. Ashbourne up to it. Second, the allegations were investigated by an independent third party who substantiated 15 allegations against Ms. Satter, and concluded in part that, quote, Ms. Satter had created and perpetuated an unhealthy work environment for many of her staff, failed to cooperate with other water resources staff, used work time for personal activities, and inappropriately accepted payments and reimbursements for her own benefit. That's at SCR 307. So not only do we have all of the allegations, there is that independent investigation which substantiates the majority of them. And as to the remaining allegations, the investigation did not exonerate the plaintiff, Ms. Satter. Instead, it simply found that the evidence didn't show one way or another what had happened. Well, is it Ms. Zimm actually said at the time of the hearing that she didn't believe the evidence was sufficient for termination, correct? That is correct. That was Ms. Zimm's position prior to the latter mill hearing. And so based upon this record, the district court correctly concluded that Satter failed to carry her burden, and to establish there was an absence of justification, that the department's decisions or justifications were mere pretext for investigating Ms. Satter's conduct. Unless the court has further questions, I will simply ask that you affirm the decisions below. Thank you. Thank you. Very briefly, when Ms. Zimm, the decision maker on the wrongful termination case against ecology, got the investigation and reviewed it, she decided then that this was insufficient to terminate Stella, and her belief remained the same through the louder mill hearing. But she sent a notice to Stella saying, we are considering discipline up to and including termination. Had she ever said, you will not be terminated, but discipline is being considered. Isn't that bureaucratic lingo? Maybe, but you've got a human being employee who is receiving messages from its employer, who in 20 years, zero discipline, you've been exiled to home with a gag order, cannot talk to anyone in the department for 94 days, and after they take two months to get the investigation and get the louder mill out, ten weeks to do that, they tell her, we're considering up to and including termination. Had they told her something else, she would never have resigned. There's a declaration of that effect. So that may be bureaucrat speak, but in this situation, in this objectively viewed situation of how would a reasonable person react to that, a reasonable person would say, they're going to fire me. They're telling me they're considering firing me. Is it that or is it they want, the employer wants to leave open its range of disciplinary remedies? That it depends. I mean, I guess you seem to be approaching this from the perspective that once the attorney finished the investigation, there was nothing more, but isn't the purpose of the louder mill hearing to consider the evidence? Couldn't the decision maker have ordered the outside attorney to conduct further investigation, depending on whatever Ms. Satter's response was to the allegations? In that hypothetical situation, anything's possible. As you bring up the timeline, Judge Tallman, the timeline's important for both the wrongful discharge and the First Amendment claim. Because once the investigation was done, then the ostensible need was gone. But when they continued that gag order, that exacerbated the seriousness of this threat of discipline up to and including termination. But the disciplinary proceedings aren't over until the decision maker decides what the final discipline is going to be. I mean, maybe it would have been a letter in her file. Maybe it would have been, we're giving you two weeks of unpaid administrative leave, or maybe we're going to fire you. Maybe you can walk in and convince me why I should give you greater discipline, is basically what you're asking. Well, I guess it depends on her response. I mean, suppose that her response to the louder mill hearing was none of this ever happened. I deny each and every allegation. She did. Notwithstanding what each of the witnesses has said. She did. Okay. After she went through an investigation where she was not even advised what the charges against her were. But Ms. Zim didn't know that, and didn't know what her response was until she actually showed up for the hearing, and then she didn't read it because she resigned before Zim read her response. So I think it would be an absurd rule to have a due process satisfaction for louder mill that you can tell everybody who you send a louder mill notice to that you're going to consider discipline up to and including termination when that's not appropriate. But it depends, doesn't it? It does. If the person comes, this is like a sentencing. If a defendant stands up in front of a sentencing judge and refuses to accept any responsibility for what he's done, his sentence might very well be harsher than what the judge had anticipated before he heard the defendant's response to it. It's always possible for a defendant to enhance his sentence or an employee to talk the discipline up. But that's not what a reasonable person would do. It's not what Stella Satter did. And Polly Zim, even after receipt of this 26-page single-spaced response, did not consider that and never changed her mind that this was not a terminable offense. But Stella never knew that. The only message she got was, you're being up to and including termination. Thank you. Thank you for the extended time. Thank you. Thank you, Mr. McGavick. Thank you, Mr. Bauer, for your arguments this morning. The case of Satter versus the State of Washington Department of Ecology is submitted. We'll now hear argument
judges: Tashima, McKeown, Tallman